17 F.3d 393
 148 L.R.R.M. (BNA) 2320
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Edward BERMINGHAM, Petitioner,
v.
NATIONAL LABOR RELATIONS BOARD, Respondent.
UNITED ASSOCIATION OF JOURNEYMEN & APPRENTICES OF the
PLUMPING & PIPE FITTING INDUSTRY OF the UNITED
STATES & CANADA, LOCAL UNION NO. 38,
AFL-CIO, Petitioner,
v.
NATIONAL LABOR RELATIONS BOARD, Respondent.
NATIONAL LABOR RELATIONS BOARD, Petitioner,
v.
UNITED ASSOCIATION OF JOURNEYMEN & APPRENTICES OF the
PLUMBING & PIPE FITTING INDUSTRY OF the UNITED
STATES & CANADA, LOCAL UNION NO. 38,
AFL-CIO, Respondent.
 Nos. 93-70272, 92-70275 and 92-70385.
 United States Court of Appeals, Ninth Circuit.
 Submitted Oct. 8, 1993.*
Decided Feb. 17, 1994.
 
 1
 Before: THOMPSON and O'SCANNLAIN, Circuit Judges; NIELSEN,** District Judge.
 
 
 2
 MEMORANDUM***
 
 
 3
 Edward Bermingham brought charges against Local Union No. 38 ("the Union") for violating sections 8(b)(1)(A) and (2) of the National Labor Relations Act ("the NLRA"), 29 U.S.C. Sec. 158(b)(1)(A). The National Labor Relations Board ("the Board") found that some, but not all, of the Union's conduct was unlawful. Bermingham and the Union both petitioned for review of those parts of the Board's order which are adverse to them. The Board cross-applied for enforcement of its order against the Union. We have jurisdiction under 29 U.S.C. Secs. 160(e) & (f). We conclude that the Board's order should be enforced, with one exception.
 
 
 4
 * The Union executed Memoranda of Understanding with the contractors to change some provisions of the combined labor agreement ("the MLA"). A union can make changes to hiring hall referral procedures so long as it "demonstrates that its interference with employment was pursuant to a valid union-security clause or was necessary to the effective performance of its representative function." Operating Engineers Local 406 (Ford Construction), 262 N.L.R.B. 50, 51 (1982), enf'd, 701 F.2d 504 (5th Cir.1983). The Union in this case changed the hiring hall rules by effectively combining the Seniority Groups ("SGs") into one SG through the elimination of the hours-of-work requirement and by suspending the 120-working-days requirement from the "Men-terminated-within-30-days" provision of the MLA. The Board found that, while the Union violated section 8(b)(1)(A) of the NLRA by providing inadequate notice, the changes themselves did not violate section 8(b)(2).
 
 
 5
 * The Union contends that it provided adequate notice because the hiring hall dispatchers gave oral notice to hiring hall users when they signed the out-of-work lists and because there was only one out-of-work list at each hall. The ALJ nevertheless concluded that the notice was inadequate, and the Board affirmed.
 
 
 6
 There is substantial evidence to support the Board's finding. First, the Union did not post the new rules. Although the Union claims that the Board cannot require posting because the law eschews mechanical approaches and because the Board cannot impose a "pervasive regulatory scheme," the Board correctly noted that the Union's failure to post violated the Union's own rules. Second, the Union allowed the old rules to remain posted, allowing workers to conclude logically that they remained applicable. Third, the oral notice did not reach all hiring hall users. Therefore, the Board properly found that the Union violated section 8(b)(1)(A) of the NLRA because of inadequate notice.
 
 B
 
 7
 Did the Union's changes violate section 8(b)(2) of the NCRA? The Board found that the modifications embodied in the MLA were done in good faith, without discriminatory motive, and were necessary to perform effective representation of Union workers in a shrinking job market. There is substantial evidence that the Union adopted the changes in order to allocate employment fairly, lest those few workers who retained SG-1 status take all the available jobs. Although Bermingham claims in his brief that the process for approving the Memoranda was flawed, this is a newly raised argument which this panel is precluded from considering. NLRB v. IBEW, Local 11, 772 F.2d 571, 574 (9th Cir.1985).
 
 
 8
 We are also satisfied that suspension of the 120-working-days requirement in the "Men-terminated-within-30-days" provision of the MLA did not require workers to change their conduct in any way. It affected only the contractors' ability to request a worker; it imposed no obligation on the worker himself.
 
 
 9
 In addition to those changes contained in the Memoranda, the Union suspended other rules. Because the Board properly concluded that the implementation of the MLA effectively merging the SGs did not violate the Act, those changes in the rules which logically flowed from the suspension of the SGs were also permissible. The Board reasoned that it would make no sense to enforce rules based on SGs while those SGs did not exist. Because these changes necessarily flowed from the legal modifications of the MLA, there is substantial evidence to support the Board's finding.
 
 III
 
 10
 The ALJ and the Board concluded that the Union deviated from its collective bargaining agreement and violated sections 8(b)(1)(A) and (2) of the NLRA. Although the Board concluded that those departures from the written rules based on the merger of SGs were permissible, some deviations were unjustified.
 
 
 11
 * The Union deviated from the letter of section 16(b) of the MLA, the "Men Terminated Within 30 Days" provision, which allowed contractors to request individuals by name if they had worked for the contractor at least 120 working days during the preceding 12 months, had worked for the contractor within 30 days prior to the request, and had not worked more than 5 days since working for the contractor. The Union interpreted "30 days" to mean "30 working days." The Board concluded that this deviation violated sections 8(b)(1)(A) and (2) of the NLRA.
 
 
 12
 The Union admits the deviation but advances two arguments. First, the Union argues that its interpretation of the MLA is reasonable, that the Board should not second-guess the Union's interpretation, and that this court should not defer to the Board's interpretation. However, this circuit has held that "[i]t is well within the NLRB's authority to interpret collective bargaining agreements"; and, "[w]here the NLRB's interpretation is reasonable and not inconsistent with the Act's policies, it is entitled to deference from this court." NLRB v. IBEW, Local 11, 772 F.2d 571, 575 (9th Cir.1985). Because the MLA specifically refers to "120 working days" and "30 days," the Board reasoned that "30 days" meant calendar days because, if the parties had wanted it to mean working days, they would have said so, as they did in other sections of the MLA. The Board's interpretation is reasonable and is entitled to deference.
 
 
 13
 Second, the Union argues that its deviation from the literal wording of the MLA does not violate sections 8(b)(1)(A) and (2) of the NLRA because it has interpreted these provisions this way for many years. However, this circuit has held that "when the hiring hall deviates from written rules without adequate justification, even pursuant to longstanding exceptions routinely applied, the Board may rationally conclude that the union is wielding its power arbitrarily." NLRB v. Ironworkers, Local 505, 794 F.2d 1474, 1478 (9th Cir.1986). The Union has advanced no justification for its deviation and, therefore, there is substantial evidence to support the Board's finding that the Union violated sections 8(b)(1)(A) and (2) of the NLRA.
 
 B
 
 14
 The Union deviated from section 16(e) of the MLA, the "Right to Hire by Name" provision, which requires a contractor to hire a worker on an unnamed basis and to have this person on the payroll, before being allowed to hire another worker by name. The Union allowed contractors to select and to hire a worker by name as long as they hired an unnamed worker at the same time. The Board concluded this was a deviation of written rules and that, therefore, the Union violated sections 8(b)(1)(A) and (2) of the NLRA.
 
 
 15
 The Union asserts that it has an adequate justification because it is more efficient to dispatch the named and unnamed workers simultaneously. However, the ALJ found that the Union offered no evidence to justify its departure from the rules, that expedience is the actual reason for the Union's conduct, and that this is not a defense to failing to adhere to hiring hall rules. Therefore, this was an unjustified violation of section 16(e). The Board affirmed the ALJ's findings. Substantial evidence supports the Board's conclusion based on the ALJ's findings.
 
 C
 
 16
 The Union deviated from section 25 of the MLA, the bumping provision, which gives an SG-1 member the right to replace any non-SG-1 member who is working unless the latter got his job under sections 16(a) or (c) of the MLA. Although the Board originally found that this change violated sections 8(b)(1)(A) and (2) of the NLRA, it has since concluded that this was a logical result of the merger of the SGs and therefore does not violate the Act. Enforcement of this provision is therefore denied.
 
 IV
 
 17
 The ALJ and the Board concluded that the Union violated sections 8(b)(1)(A) and (2) of the NLRA by refusing to dispatch Bermingham to jobs, by removing his name from the San Rafael hiring hall's June 1989 out-of-work list, and by refusing his document request.
 
 
 18
 * The Board determined that Bermingham was not dispatched because he filed charges against the Union with the Board. The Board based its conclusions on statements made by Union officials at each of the three hiring halls.[1] The Union asserts that the statements relied on by the ALJ and the Board to show animus can be explained as jest or irony. However, "[t]he Board is to be accorded special deference in drawing derivative inferences from the evidence." NLRB v. Tischler, 615 F.2d 509, 511 (9th Cir.1980). A reviewing court should defer to the Board's reasonable inference of unlawful motivation even if the reviewing court would draw an opposing reasonable inference. Famet, Inc. v. NLRB, 490 F.2d 293, 295 (9th Cir.1973). The Board's inference is reasonable because one could interpret the statements by Union officials as animus in response to Bermingham's protected activities and there is substantial evidence that the Union officials failed to dispatch Bermingham because of the charges he filed.
 
 B
 
 19
 The ALJ and the Board determined that the Union's business agent at the San Rafael hiring hall, Fred Castro, improperly removed Bermingham from the June 1989 out-of-work list because of animus caused by Bermingham's charges against the Union. In its brief, the Union did not mention or justify its action. Because of the statements Castro made to Bermingham, see fn. 1, there is substantial evidence on the record that Castro was retaliating against Bermingham because of his protected activities. See NLRB v. United Union of Roofers, Local 81, 915 F.2d 508, 511 (9th Cir.1990).
 
 C
 
 20
 The Union refused Bermingham's request for dispatch information, including dispatch slips, requests for rehires and workers with special skills, and out-of-work lists. Although the Union asserts that the request is burdensome, it has presented nothing beyond this mere assertion. There was substantial evidence sufficient to support the ALJ's and the Board's conclusion.
 
 V
 
 21
 Bermingham argues that he is entitled to attorneys' fees, relying on 29 U.S.C. Sec. 431, which requires unions to file certain information with the Secretary of Labor. However, Bermingham did not bring his suit under section 431, and he gives no valid reason why it is applicable in this case. The request for attorneys' fees is denied.
 
 
 22
 ENFORCED IN PART.
 
 
 
 *
 The panel unanimously finds this case suitable for submission on the record and briefs and without oral argument. Fed.R.App.P. 34(a), Ninth Circuit R. 34-4
 
 
 **
 The Honorable Wm. Fremming Nielsen, United States District Judge for the Eastern District of Washington, sitting by designation
 
 
 ***
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit R. 36-3
 
 
 [1]
 Jim Kazarian, the Union's business agent at the San Francisco hiring hall, said about Bermingham "That son of a bitch has charges against me and I've got to give him a job." Raymond Springer, the Union's business agent at the Santa Rosa hiring hall, told Bermingham over the phone, "Because of the commotion you've been causing down at the Union you're going to have to come in and sign the list." Fred Castro, the Union's business agent at the San Rafael hiring hall, accused Bermingham of being "Melvin Belli" and told him "Eddie, you're going to starve to death doing that."